THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RALPH NUNLEY, Defendant-Appellant.

First District (4th Division)   No. 1—92—4364

Opinion filed March 30, 1995.

Rita A. Fry, Public Defender, of Chicago (Joseph M. Gump, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, and Christine A. Stephens, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

A jury found defendant, Ralph Nunley, guilty of the murder and armed robbery of Paul Ray, Jr. On appeal, defendant contends he was deprived of a fair trial by the admission of other crimes evidence which was irrelevant to his case and overly prejudicial and inflammatory.

On July 11, 1989, defendant was arrested for the alleged aggravated battery of his mother, Ruth Admundson. While in police custody, defendant confessed to stabbing Admundson and killing her dog on July 11, 1989, and also to the March 6, 1988, murder and armed robbery of Ray in Ray's home in Justice, Illinois. Resulting from the attack on Ray, defendant was charged with the first-degree murder and armed robbery at issue in this appeal.

Prior to trial, defendant moved to suppress his confession, claiming that it was the product of his intoxication and physical coercion by police. After a hearing at which comprehensive evidence was adduced, the court denied defendant's motion.

During pretrial proceedings, defendant made numerous motions *in limine* to bar any reference in the State's case in chief and opening statement to the killing of his mother's dog. Defendant also requested that there be no mention of his mother's stabbing. Alternatively, he requested that the court permit an examination of prospective jury members concerning their feelings about pets. While expressing concern over the inflammatory nature of this evidence, and the fact that some jurors may consider the killing of a dog more depraved than that of an individual, the trial judge declined to exclude the evidence and permitted the State to refer to both the aggravated battery and the killing of the dog in its opening statement. However, the judge permitted defendant to inquire of venirepersons regarding whether they had pets and their feelings towards them.

After jury selection commenced, defendant renewed his motion to exclude evidence of the killing of the dog. Defendant pointed out that several members of the initial venire, though dismissed, had expressed strong sentiments towards animals. The court rejected defendant's argument, finding that the evidence was necessary to illuminate defendant's state of mind precipitating his confession. The court stated that without the evidence, it would be difficult to explain why defendant would spontaneously confess to killing Ray while incarcerated for a separate crime. Thus, the court denied the motion,

but precluded the State from referring to the dog killing in its opening statement.

The evidence at trial may be summarized as follows. Medical testimony established that Ray died of several gunshot wounds to the head fired from close range and that his system contained traces of metabolized cocaine. Nancy Jones, a forensic pathologist, testified that Ray had bruises around the upper and lower lids of both eyes. Defendant's former co-worker, William Holm, testified that he had supplied defendant with the gun for the offense. Holm indicated that defendant had approached him several months before the murder and inquired where he could buy a gun to "rip off some coke dealer in Justice."

Ray's girlfriend, Janice Meritt, testified that around the time of the murder, Ray had been selling and using cocaine. Meritt testified that on the morning of March 6, 1988, Ray received a telephone call, talked for several minutes, and then drove her to work. When Meritt returned home from work later that day, she found Ray's body on their living room sofa and notified police. An evidence technician and a forensic scientist established that various personal items were found at the scene and examined for fingerprints, but none was conclusively linked to defendant.

Officer Thomas J. Clark testified regarding the events of July 11, 1989. That afternoon, he and his partner received a call about a woman stabbed at a residence later shown to be defendant's. Upon arriving at the scene, Clark saw a medium-sized dog lying motionless on the sidewalk in a pool of blood. Unsure of the situation, Clark and his partner drew their weapons. They were then approached by two men on the scene who informed them of what occurred. Clark testified that defendant subsequently came out of a gangway adjoining the residence with large amounts of blood on his legs, hands and torso. After placing defendant in a squad car, Clark noticed a paramedic attending to Ruth Admundson in a nearby ambulance. Clark testified that on the way to the station, defendant calmly told them that he had attacked Admundson because "she had Satan in her and he had to get Satan out and the best way to do that was to cut her head off." Defendant further related that when the family dog intervened, he had stabbed it too, because it was also possessed by Satan.

Clark testified that when they arrived at the station, they handcuffed defendant and placed him in a cell because defendant's family had informed police that defendant was under the influence of narcotics. Once inside the cell, defendant began yelling. The State presented the testimony of three officers and a nurse concerning

defendant's violent and aggressive behavior during the afternoon and early evening of July 11, 1989. The testimony established that while in his cell, defendant had blood on himself and was combative and excitable, "bouncing himself against his cell" and threatening to kill police officers. Police subsequently took defendant to the hospital for a brief period of observation. Although he was calm on the way, when he arrived at the hospital and was placed in restraints, defendant resumed threatening and screaming at police and hospital personnel. Defendant removed his restraints and kicked a hospital security guard in the face, sustaining an injury near the bridge of his nose in the ensuing scuffle.

Shortly thereafter, a nurse examined defendant and found that his appearance and vital signs were normal. Defendant was treated for his facial injury and then released to the police station that evening. He was calm during this trip and appeared relaxed when returned to his cell. During its cross-examination of an attending nurse, the defense elicited testimony that defendant shouted that he had "killed his mother and his dog."

Officer Michael Fleming testified that he investigated the aggravated battery of Ruth Amundson. On July 12, 1989, after receiving *Miranda* rights, defendant admitted to Fleming and Assistant State's Attorney Robert Podlasek that he had stabbed his mother and that he intended to kill her because she was possessed by Satan. Defendant also admitted stabbing and killing his mother's dog when it came to her aid. When defendant then said that he felt much better because he'd confessed to the truth, Fleming inquired whether he'd committed any other crimes. Defendant replied that he killed a man in Justice, Paul Ray, at Ray's home about one year and a half ago. Defendant described the home and stated that he shot Ray three times.

Later that day, in the presence of Fleming, Officer Jerry Carter, and Assistant State's Attorney Robert Podlasek, defendant gave a more extensive confession to the murder. Fleming testified to the details of this confession, and his testimony was corroborated by Podlasek and Carter. Defendant admitted that the gun he used had come from William Holms, and he identified some of his personal effects recovered at the scene. During Podlasek's testimony, the State again elicited defendant's admission to having tried to kill his mother by cutting her head off and to killing the family dog when it came to her aid.

After confessing to Fleming, Carter, and Podlasek, defendant again received *Miranda* rights and gave his confession before a court reporter. The confession, which was executed by defendant and

published to the jury, provided that defendant had telephoned Ray and gone to Ray's home to get cocaine. He had then shot Ray with a .22-caliber pistol and taken cocaine and money from the home. Over defense objection, the jury was allowed to hear evidence that defendant stated he shot the decedent because he "did not want to go back to jail."

In the defendant's case, Admundson testified to the events of her stabbing and to defendant's heavy drug use the week preceding July 11, 1989. The evidence of defendant's intoxication was corroborated by defendant's brothers, who established that he had been smoking marijuana laced with "formaldehyde PCP," getting very little sleep, and acting unusually religious. Richard Kowalewicz, a crisis worker at Nazareth Hospital who examined defendant on July 11, 1989, testified that defendant had admitted consuming alcohol and PCP, which the worker testified causes users to become very violent. Defendant relayed to Kowalewicz that he was unable to recall what occurred before he was brought to the hospital, but that he loved his mother and her dog and "didn't know why he did it." Kowalewicz testified that defendant also expressed delusional thoughts, such as the belief that police were going to kill him.

Following arguments, the jury returned a verdict of guilty of armed robbery and first-degree murder. The court later sentenced defendant to natural life imprisonment. The instant appeal followed.

Defendant argues that he was deprived of a fair trial by the allowance of evidence that he stabbed Admundson and killed her dog. Defendant contends that these acts bore no relation to Ray's shooting 16 months earlier and that their probative value was far outweighed by the prejudicial impact upon the jury.

██ Evidence of crimes other than those for which defendant is on trial is inadmissible if relevant merely to show his propensity to commit crime. (*People v. Cruz* (1994), 162 Ill. 2d 314, 348, 643 N.E.2d 636.) The danger is that such evidence proves too much and may lead the jury to convict defendant solely upon the belief that he is a person of bad character and thus likely to have committed the crime charged. (*Cruz*, 162 Ill. 2d at 348; *People v. McKibbins* (1983), 96 Ill. 2d 176, 184, 449 N.E.2d 821.) Although such evidence may be admitted if relevant for any purpose other than propensity (*People v. Richardson* (1988), 123 Ill. 2d 322, 339, 528 N.E.2d 612; *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484, 485 N.E.2d 1292), it should be excluded if its probative value is outweighed by the dangers of unfair prejudice, jury confusion or delay. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840; see also *Cruz*, 162 Ill. 2d at 348.) Additionally, the actual need for the evidence must be considered in

light of other methods of proof available to the prosecution. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 404.5, at 201 (5th ed. 1990).) If other crimes evidence is admitted, it should not lead to a mini-trial of the collateral offense; the court should carefully limit the details to what is necessary to illuminate the issue for which the other crime was introduced. *People v. Bartall* (1983), 98 Ill. 2d 294, 315, 456 N.E.2d 59; see *People v. Chambers* (1994), 259 Ill. App. 3d 631, 634-35, 631 N.E.2d 817.

The State asserts that the evidence was essential to the continuing narrative of defendant's arrest and confession and to explain why he would spontaneously confess to a murder committed 16 months earlier. In particular, the State notes that defendant expressed relief after admitting to his acts of July 11, 1989, and that this prompted his confession to the crimes at issue. Thus, the evidence was needed to demonstrate that the confession was voluntary rather than a product of police misconduct.

■ We agree that some evidence of defendant's acts of July 11, 1989, was necessary to establish the voluntariness of his confession. However, the detail and repetitive manner in which the evidence was presented greatly exceeded what was required to accomplish this purpose (see *Chambers*, 259 Ill. App. 3d at 635) and subjected defendant to a mini-trial over conduct far more grotesque than that for which he was on trial.

In light of the extremely inflammatory nature of the prior conduct evidence, it was unnecessary to provide a "continuing narrative" of defendant's arrest in this case, especially since the acts precipitating the arrest were completely unrelated to the crime at issue and in and of themselves shed no light upon whether or not defendant robbed and murdered Ray. The testimony of one witness that, at the time of his confession, defendant was in custody for the aggravated battery of his mother would have sufficed to establish that his confession was motivated by remorse or an effort to clear his conscience. Instead, the State called three witnesses, two of whom testified that defendant had intended to kill his mother by decapitating her, to rehash the stabbing of Admundson and the killing of her pet which attempted to protect her. We believe the true purpose of this evidence was to portray defendant as a man of bad character. Indeed, this was apparent in the prosecutor's closing argument, in which he urged the jury to end defendant's "reign of terror" and "reign of murder." We conclude that the allowance of extensive testimony regarding the events of July 11, 1989, apart from the fact of the aggravated battery, was an abuse of discretion.

The erroneous admission of other crimes evidence ordinarily calls for reversal unless the record affirmatively demonstrates that no prejudice occurred. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 140-41, 402 N.E.2d 238.) Although the trial court instructed the jury as to the limited purpose of the other crimes evidence, it did not cure the prejudice to defendant in this case. This matter must be reversed and remanded for a new trial.

As a further basis for admission of the evidence concerning the killing of the dog, the State argues that it anticipated that defendant would produce pictures of scratches on his arms and legs, and attempt to link these injuries to police. Initially, we note that such pictures never materialized at trial. However, if defendant introduces any evidence of scratches or cuts on remand, he will be deemed to have opened the door for the State to put on whatever rebuttal evidence is necessary to refute a suggestion of police misconduct.

For the foregoing reasons, we reverse and remand for a new trial.

Reversed and remanded.

S. O'BRIEN, J., concurs.

JUSTICE THEIS, dissenting:

The majority concludes that, while evidence of the other crimes was admissible, the evidence was presented in a detailed and repetitive manner and, consequently, the conviction must be reversed. However, a ruling allowing the introduction of evidence of other crimes will be upheld unless it represents an abuse of discretion. (*People v. Maxwell* (1992), 148 Ill. 2d 116, 592 N.E.2d 960.) Because I find no abuse of this trial court's discretion in admitting any of the evidence, I dissent from the majority's opinion.

The only evidence connecting this defendant to the 16-month-old murder case was his confession. The State's theory was that the defendant felt such remorse from his statement concerning his mother that he was moved suddenly to reveal his involvement in an unsolved crime. Before trial, the defendant had presented a motion to suppress the confession based on allegations of physical coercion. Several witnesses testified that the defendant had bruises and other injuries. There was testimony at trial that the defendant was covered with blood. It would be difficult, if not impossible, for the State to explain the defendant's bizarre behavior and subsequent confession without introducing evidence of the context of his arrest and the circumstances of his conversations with police.

In this respect, this case is not unlike *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821. In that case, the court stated, "It

would be difficult to explain or describe circumstances surrounding the defendant's arrest without introducing a substantial amount of the evidence concerning the [other crime]." (*McKibbins*, 96 Ill. 2d at 183, 449 N.E.2d at 824.) Noting that evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime, the court allowed detailed evidence about another crime which was in progress when the arrest was made.

Applying *McKibbins*, it appears clear that the State needed to present some evidence concerning the other crime. The majority agrees with this point. However, the majority and I disagree over the amount of the evidence that should be admitted.

Unlike the majority, I cannot agree that the introduction of this evidence was an abuse of the trial court's discretion. Here, the trial court limited the prejudicial effect of the evidence. As the majority notes, it is well established that evidence of other crimes may be admitted if it is relevant, but should be excluded if its probative value is outweighed by prejudice. The record demonstrates that the trial court was mindful of the prejudicial nature of the evidence and attempted to minimize the prejudicial effect of the testimony. On several occasions, the trial court balanced the evidence and found it more probative than prejudicial. Additionally, the trial court *sua sponte* gave limiting instructions to the jurors after the State introduced evidence of the other crimes. Finally, the jurors were instructed again at the close of the case that the evidence had been received on the issue of the defendant's arrest and statement and should be considered only for that limited purpose.

I am also moved to dissent from the majority's decision because I feel that the majority has misinterpreted certain relevant facts presented by this record. The majority states that the defendant was subjected to a "mini-trial" because three State's witnesses testified instead of one. However, the record demonstrates that the State called 15 witnesses in its case in chief. Three of the witnesses mentioned the other crimes very briefly. None emphasized the violence used against the defendant's mother or the dog, nor did they provide inflammatory descriptions of the attacks. At no point did the defendant object that the State was exceeding the scope of the motion *in limine*.

The majority also states that the prosecutor's closing argument used the evidence of the prior act to depict the defendant as a man of bad character because the prosecutor urged the jury to end the defendant's "reign of murder." However, the majority has not quoted the entire argument of the prosecutor. In fact, the prosecutor urged

the jury to end the "reign of murder and armed robbery." This reference was clearly a reference to the crimes committed against Paul Ray and not a reference to the crimes committed against the defendant's mother and the dog.

The trial court was faced with the difficult task of weighing the probative value of the evidence and limiting its introduction to avoid prejudicing the defendant. After reviewing the record, I find that the trial court scrupulously endeavored to ensure the fairness of the proceedings. In short, the trial court gave the defendant a fair trial. I would affirm.