2019 IL App (1st) 153346
No. 1-15-3346
Order filed December 23, 2019
Modified after denial of rehearing February 10, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 08221 |
| GANAA OTGOO | ) ) ) | |
| Defendant-Appellant. | ) ) ) | The Honorable Lauren Gottainer Edidin, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Griffin and Justice Walker concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court improperly admitted testimony regarding defendant's actions toward the arresting officers during a separate incident five hours after the assault, for fighting at a different location; the error was harmless because the evidence was not closely balanced and the jury was properly instructed. The trial court did not abuse its discretion in admitting defendant's aggravated battery conviction for impeachment because its probative value was not substantially outweighed by any undue prejudice; and the alleged prosecutorial misconduct did not prejudice the defendant and there was no cumulative effect of any alleged error on the guilty verdict.

¶ 2        After a jury trial, defendant Ganaa Otgoo was convicted of aggravated battery of Armando Velez on a CTA train as it traveled through Skokie, Illinois. Velez reported the attack to the Skokie police. Five hours later, Chicago police arrested Otgoo for fighting on a street corner and he was released on a recognizance "I-bond."

¶ 3        About two weeks later, in the course of investigating the CTA battery, Skokie police contacted the arresting officer from the Chicago case asking for assistance. The officer identified Otgoo from still photographs taken from the CTA security tapes that recorded the incident. Because Otgoo was due in court for the Chicago battery charge on April 17, the two officers agreed that someone from the Skokie police department would meet Otgoo at the courtroom when he made his appearance. On April 17, Skokie police detectives arrested Otgoo on his way out of the courthouse. The same day, Velez identified Otgoo in a five-person lineup.

¶ 4        The State charged Otgoo with two counts of aggravated battery; one count based on public property and the other based on the victim being 60 years or older. 720 ILCS 5/12-3.05 (c) (West 2014); 720 ILCS 5/12-3.05 (d)(1) (West 2014). The jury convicted Otgoo of the count of aggravated battery on public property and acquitted on the second count. Otgoo was sentenced to five years' imprisonment.

¶ 5        Before Otgoo's trial, the State sought to admit evidence of other crimes, including 13 previous arrests as well as the Chicago arrest five hours after the Skokie incident. The trial court allowed only the Chicago arrest to be introduced through live testimony because it related to the investigation of the Skokie crime and led to Otgoo's arrest.

¶ 6        We affirm. First, although the testimony about Otgoo's actions during his arrest for the Chicago battery five hours after the Skokie battery was prejudicial and not probative of the investigation process that led to Otgoo's identification, and was admitted in error, the evidence

adduced at trial was overwhelming and the error was cured by the jury instruction. We cannot say the jury would have acquitted had the trial court not allowed Loiacono's testimony about Otgoo's behavior during the March 29 arrest. Second, when Otgoo testified, he put his credibility in issue, and the trial court properly allowed the State to impeach him with evidence of an arrest in 2008. Finally, no error occurred during the State's direct examination of Velez; the State's remarks in closing were not inflammatory or prejudicial to Otgoo; and, in any case, jury instructions cured any alleged error.

¶ 7                                  Background

¶ 8                              *Motion in Limine*

¶ 9        The State moved *in limine* to admit evidence of other crimes, which the trial court denied. The motion included 13 other arrests beginning in April 2008 through February 2014.

¶ 10       The motion also included a battery arrest in Chicago at 1:30 a.m. on March 29, five hours *after* the battery against Otgoo. The motion asserted the Chicago police officer who arrested Otgoo noticed he was wearing the same unusual jacket as in the CTA suspect's photo that the Skokie Police Department released. Otgoo was intoxicated, "belligerent and short-tempered that night" and his behavior quickly escalated from verbal confrontations to angry encounters, ending with Otgoo beating up a stranger. The trial court found these similarities as well as the proximity in time weighed in favor of admissibility despite the potential prejudicial effect.

¶ 11                             *Trial Testimony*

¶ 12       At trial, Velez testified that on March 28, 2014, around 8:15 p.m., he was riding on the Skokie Swift CTA train when a stranger began punching and kicking him. Velez was wearing a leather jacket and a hoodie. He stated the attack was unprovoked. Velez sustained bruises and cuts on his face. Velez got off the train at his usual stop and tried to tell a Chicago police officer on the

platform about what happened. The officer told Velez he needed to file a complaint with the Skokie police, as the attack occurred in Skokie.

¶ 13    When Velez arrived at home his relatives took him to the hospital where he was treated and released. Hospital personnel called the Skokie police.

¶ 14    On April 17, Velez identified Otgoo in a lineup at the Skokie police department. When asked how he recognized Otgoo, Velez stated he would never forget Otgoo's face because "he tried to bash my face in."

¶ 15    The CTA security video was shown to the jury. Velez identified himself and Otgoo on the CTA video, and described Otgoo's actions in the video as punching and kicking him. No one on the train helped him or intervened. Since the night of the incident, Velez has felt scared and insecure about public transportation, and has traveled on public transportation only during the day and stopped taking the Skokie Swift CTA train.

¶ 16    Skokie detective Ronald Glad investigated the CTA battery. Glad testified that a Skokie police officer interviewed Velez at the hospital shortly after midnight on March 29. Two days later, the case was assigned to Glad, who interviewed Velez and his family. They provided photographs of Velez's facial bruises. Glad also obtained the CTA train security camera video and captured several still photographs from the video. The images showed distinctive insignia on the suspect's jacket. Glad used the still photographs to create a "critical reach bulletin" for distribution to law enforcement agencies and to the public via media outlets. Glad learned the CTA created its own bulletin for the Chicago police department. After learning Otgoo's name from a Chicago police sergeant, Glad checked the database and discovered Otgoo's Chicago arrest.

¶ 17    Chicago police officer Joseph Loiacono testified that he arrested Otgoo in Chicago shortly after midnight on March 29, 2014. Loiacono and his partner received a radio call about a fight on

the northwest side of Chicago. When they arrived at about 1:30 a.m., Loiacono saw Otgoo on the sidewalk hitting another man, while a third man stood by. Otgoo was wearing a black turtleneck and an oversized leather-like jacket with multiple insignias. Loiacono arrested Otgoo, who was "irate, belligerent, and extremely aggressive." Otgoo repeatedly called both officers names and told them "f*** you." Otgoo refused to give his name. The officers arrested Otgoo and learned his name from his ID which was then entered in the database, along with his booking photo. Later that morning, Otgoo was released from custody on an I-bond.

¶ 18       On April 17, Loiacono received a call from Skokie detective Michael Lebow, seeking help in an investigation of the CTA battery. When they met, Lebow showed Loiacono still photographs taken from the CTA surveillance tapes. Loiacono recognized Otgoo from the distinctive jacket and his height and stature (5'8" tall and 160 lbs. at the time of arrest). Defense counsel objected to Loiacono's answer that he "determined" Otgoo was the person in the photo. The trial court sustained the objection. Loiacono then stated he "believed" it was Otgoo in the photo.

¶ 19       At this juncture, the defense moved for a mistrial, arguing that the State violated the trial court's ruling on the motion *in limine* that prohibited testimony regarding Loiacono's identification. The trial court denied the motion for a mistrial because the testimony that was allowed was within the language discussed regarding the motion *in limine*.

¶ 20       Loiacono testified further that he told Lebow that Otgoo was due in branch court on April 17 on the street fighting charges. That afternoon, when Otgoo left the courtroom, two Skokie police detectives arrested him for the CTA battery.

¶ 21       Otgoo testified. In 2014, he was 32 years old, had lost his job in construction, and was living at a homeless shelter. He denied beating up Velez or being on the Skokie Swift CTA that

night. When he went to court "for the self-defense" that was dismissed, the police arrested him as he left the court.

¶ 22       On cross-examination, Otgoo stated his real name was "Yuchin Otogonnamar," and admitted having used two other names in the past, "Kim Duhan" as well as "Ganaa Otgoo."

¶ 23       After Otgoo testified, the State impeached him with a 2008 aggravated battery conviction against a police officer. The State introduced a certified copy of the conviction, telling the jury that Otgoo was "convicted of the felony offense of aggravated battery causing bodily harm to a peace officer."

¶ 24                                    *Closing Argument*

¶ 25       In closing argument, the State argued that Otgoo's 2008 conviction showed that Otgoo "does not follow the rules of civilized society." Over objection, the State repeated the argument, stating the 2008 conviction showed Otgoo's "contravention of the rules of society." The State also argued that after the CTA incident Velez was fearful about wearing hoodies or riding on the CTA at night.

¶ 26                                    *Jury Instructions*

¶ 27       The trial court instructed the jury: "Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received on the issue of the defendant's identification and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of the defendant's identification."

¶ 28       The trial court further instructed: "Evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not

be considered by you as evidence of his guilt to the offense with which he is charged." See IPI Criminal 3.13.

¶ 29	The trial court told the jury to determine facts only from the evidence, apply the law to the facts, and "in this way decide the case." The trial court instructed the jury about treating all testimony the same, whether the witness was in law enforcement or not.

¶ 30	Also, "[f]rom time to time it has been the duty of the court to rule on the admissibility of the evidence. You should not concern yourselves with the reasons for these rulings. You should disregard questions and exhibits which were withdrawn or to which objections were sustained."

¶ 31	Lastly, the jury was instructed "Opening statements are made by the attorneys to acquaint you with the facts they expect to prove. Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and to reasonable inferences to be drawn from the evidence. Nether opening statements no closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

¶ 32	The jury convicted Otgoo of aggravated battery on a public way. and acquitted him of aggravated battery of an individual 60 years or older. 720 ILCS 5/12-3.05 (c) (West 2014); 720 ILCS 5/12-3.05 (d)(1) (West 2014).

¶ 33	*Motion for New Trial*

¶ 34	The trial court denied Otgoo's motion for a new trial. The trial court found the jury verdict was proper, stating that the information about Otgoo's identity and how the police arrested him was limited. The trial court did not allow all the crimes the State sought to introduce, and only the arresting officer testified about the circumstances of the later incident.

¶ 35	The trial court sentenced Otgoo to five years' imprisonment.

¶ 36                                    Analysis

¶ 37                            *Other Crimes Evidence*

¶ 38        In our initial decision, we held that no error occurred when the trial court allowed Loiacono to testify about the circumstances of Otgoo's arrest five hours after the CTA incident. Loiacono related the process of identifying Otgoo from the still photographs shown to him by Skokie police who were investigating the incident. Loiacono testified that he recognized Otgoo from his distinctive jacket, height, and stature. None of this identification testimony relates to Otgoo's behavior at the time of the arrest. So the testimony about Otgoo's belligerent and irate behavior, the presence of alcohol on his breath, and his reaction to the arresting officers (yelling profanities and calling them names) was all unnecessary to the narrative of "good police work."

¶ 39        We hold the detailed description of Otgoo's name-calling and general behavior toward the police officers was unnecessary to establish reliability of Loiacono's identification testimony. Prejudicial evidence denies a defendant a fair trial when it is a "material factor in his conviction such that without the evidence the verdict likely would have been different." *Cortes*, 181 Ill. 2d at 285. But the error in allowing this testimony, even though an abuse of discretion, was harmless considering Velez's eyewitness identification, the CTA video from the night of the incident, and the jury instructions regarding use of this testimony.

¶ 40        Evidence of other crimes is admissible as long as relevant for any purpose other than to show a defendant's propensity to commit crime. *People v. Chapman*, 2012 IL 111896, ¶ 19. Those permissible purposes include, for example, motive, intent, identity, lack of mistake, and *modus operandi*. *People v. Dabbs*, 239 Ill.2d 277, 283 (2010). Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of an action more probably or less probable than it would be without the evidence. *People v. Illgen*, 145 Ill. 2d 353, 365-66 (1991).

Generally, other offenses which are close in time to the charged offense will have more probative value than remote offenses. *Id*. at 370. The trial court evaluates the probative value of the evidence and makes the decision on a case-by-case basis. *Id*. But, evidence of other crimes becomes inadmissible if its relevance relates only to establishing a defendant's bad character or propensity to commit the crime. *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991).

¶ 41    Even if probative, the evidence should not be admitted if its prejudicial impact "substantially outweighs its probative value." *Chapman*, 2012 IL 111896, ¶ 19 (citing *People v. Moss*, 205 Ill. 2d 139, 156 (2001)). This type of evidence "over persuades the jury which might convict only because it feels he is a bad person deserving punishment." *Thingvold*, 145 Ill. 2d at 452. Other-crimes evidence should not lead to a "mini-trial" on the other offenses. *People v. McKibbins*, 96 Ill. 2d 176, 186-87 (1983). A trial court carefully limits other crimes evidence to that which is relevant for the purposes for which it was introduced. *People v. Thigpen*, 306 Ill. App. 3d 29, 37 (1999) (citing *Nunley*, 271 Ill. App. 3d at 431). The questions of relevance and probative value fall within the discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *People v. Wilson*, 214 Ill. 2d 127, 136 (2005).

¶ 42    To illustrate, the requirement of some threshold similarity to the crime charged was met in *People v. Bartall*, 98 Ill. 2d 294, 310 (1983). In *Bartall*, the trial court admitted evidence that the defendant was involved in two separate shootings. Id. "Striking similarities" between the two shootings related to the issue of the defendant's mental state. *Id*. These similarities increased the relevance of the evidence and ensured that it is not being used solely to establish a defendant's criminal propensities. *Id*. In both shootings the defendant shot from a moving car. *Id*. at 301-02. Both shootings were unprovoked. *Id*. The second shooting happened 20 hours after the first. *Id*. at 302. The supreme court found the second shooting incident to be sufficiently similar to the earlier

homicide to make it admissible on the issue of intent, which, taken with the other evidence, "could provide the basis for an inference that the defendant had the criminal intent required for murder." *Id*. at 312.

¶ 43    *Bartall* noted the importance of avoiding a "mini-trial" of another incident to establish enough acts from which the defendant's intent may be inferred. *Id*. at 315. Even when admitted, the other offense evidence must not become a focal point of the trial. *People v. Thigpen,* 306 Ill. App. 3d 29, 37 (1999) (testimony about other murders and photos of victims sent to jury were irrelevant; limiting instruction did not cure resulting unfair prejudice). But where the court limits the evidence of another crime to what's relevant to the issue for which the other crime is admitted, even detailed evidence is *not necessarily* prejudicial error. See *Bartall*, 98 Ill. 2d at 315.

¶ 44    The State maintains that the evidence of Otgoo's similar conduct five hours after this incident explains the circumstances of Otgoo's arrest for the Skokie assault and establishes a continuing narrative of events surrounding the arrest. The motion *in limine* described Otgoo as having a "hair trigger anger towards strangers." The State's position maintains that Otgoo exhibited this anger when he attacked Velez and, again, five hours later when he was fighting with two other individuals in Chicago. Moreover, the investigation of the CTA crime led quickly to an identification of Otgoo based on the photographs from the CTA security video.

¶ 45    Proximity of time, even when accompanied by proximity of place, is not, standing alone, sufficient as a basis for permitting evidence of other offenses. *People v. Lindgren,* 79 Ill.2d at 139. See *People v. Walls* (1965), 33 Ill.2d 394, (proximity plus issue of identity). In *Walls*, the prosecution was permitted to prove the car used to transport the victim had been stolen. The supreme court held the trial court did not err by admitting the evidence and affirmed the conviction. The evidence advanced a "continuing narrative" as well as the driver's identity. *Id*. at 398.

See *People v. Jackson,* 391 Ill. App. 3d 11, 34 (evidence of other crimes properly admitted as part of continuing narrative of crime).

¶ 46 At trial, Loiacono described the circumstances of Otgoo identification and later arrest for the aggravated battery of Velez. The trial court allowed the State to present evidence of Otgoo's lack of cooperation with police officers, aggressive attitude, and name-calling during his arrest for the second battery. The State adds that the evidence supported Velez's identification of Otgoo because he had on the same jacket. Otgoo's arrest for similar behavior (public fighting), close in time, and wearing the same distinctive clothing relates to the reliability of his identification. These circumstances did not follow the typical timeline of an investigation where a crime occurs and an arrest made contemporaneously or quickly afterward. Instead, the identification of the suspect on the CTA train incident did not occur until the Skokie and Chicago police investigation revealed a suspect wearing the same jacket and engaging in the same behavior a mere five hours apart. The pattern of behavior was consistent. Good police work resulted in Otgoo's arrest. And the testimony about the Chicago fight was probative of Otgoo's identity. The trial court found these similarities and the proximity in time weighed in favor of admissibility despite the potential prejudicial effect. The trial court sustained an objection to Loiacono's testimony that he "determined" the assailant in the video was Otgoo; instead, Loiacono gave his opinion that based on his observations he "believed" it was Otgoo.

¶ 47 Moreover, the trial court instructed the jury: "Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received on the issue of the defendant's identification and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of the defendant's

identification." The trial court also instructed the jury about treating all testimony the same, regardless of whether the witness was in law enforcement.

¶ 48    After a hearing on the motion *in limine*, the trial court, in its discretion, found the probative value of the "other crimes evidence" of the March 29 arrest outweighed any prejudice resulting from the jury's knowledge of his arrest five hours later. The trial court found Loiacono's testimony about the street fight in Chicago that led to Otgoo's arrest as probative of the reliability of the identification and allowed Loiacono's testimony that explained the police investigation that resulted in Otgoo's arrest. Loiacono testified Otgoo was wearing a distinctive oversized jacket that had insignias on the front and back with a black turtleneck underneath. Loiacono described Otgoo's demeanor (belligerent), the presence of alcohol on his breath, and his reaction to the arresting officers (yelling and calling them names). But Loiacono did not testify that Otgoo's explosive behavior toward the arresting officers was a factor in his concluding that the person in the video was the same person he arrested.

¶ 49    At the end of the trial, the trial court instructed the jury: "Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received on the issue of the defendant's identification and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issue of the defendant's identification."

¶ 50    While Otgoo's behavior during his arrest for a different offense should not have been before the jury, it did not become the "focal point of the trial." See *Bedoya*, 325 Ill. App. 3d at 938, 940 (probative value outweighed by prejudice of "presentation, in excruciating detail, of the other offense evidence, the prosecution argument concerning the other offenses, the trial court's

failure to give a timely limiting instruction, and the trial court's refusal to tell the jury [defendant] had been acquitted of charges that he fired his gun at the three buildings"). And unlike in *Bedoya*, the limiting instruction guided the jury as to the use of Loiacono's testimony detailing how the investigation took shape and the steps that led to Otgoo's arrest. Without Loiacono's testimony, the jury would be left wondering just how his arrest came about almost three weeks later.

¶ 51　　　In addition to *Bedoya*, Otgoo relies on another case, *People v. Nunley*, 271 Ill. App. 3d 427 (1995), holding that other crimes evidence unduly prejudiced the defendant. In *Nunley*, the defendant was convicted of armed robbery and murder. *Id*. at 427. The appellate court ordered a new trial because the trial court allowed evidence of a separate murder that included detailed and repetitive testimony of three witnesses regarding acts underlying that arrest, amounting to a "minitrial" of the collateral offense that was "far more grotesque" than the conduct for which he was on trial. *Id*. at 432. The nature of the prior conduct evidence was "extremely inflammatory" (attempting to decapitate his mother and killing her dog), and the jury instructions as to the limited purpose of the other crimes evidence did not cure the prejudice. *Id*. at 433.

¶ 52　　　The trial court properly denied the State's motion to admit evidence of 13 prior arrests spanning almost six years. Those arrests would have constituted evidence of Otgoo's propensity for fighting and angry outbursts. The trial court did not err when it allowed the testimony about Otgoo's arrest some five hours after the CTA train incident, but the details related by Loiacono should have been excluded because any probative value of the details was outweighed by the prejudice of hearing about Otgoo's explosive behavior during the later arrest.

¶ 53　　　Erroneous admission of other crimes evidence ordinarily calls for reversal because of the high risk of prejudice. *People v. Cortes*, 181 Ill. 2d 249, 285 (1998). But the "improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair

trial based upon its admission." *People v. Nieves*, 193 Ill. 2d 513, 530 (2000). Even where admitted in error, admission of other-crimes evidence calls for reversal only if the evidence constitutes "a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different." *People v. Hall*, 194 Ill. 2d 305, 339 (2000). In other words, reversal is not required when the error is unlikely to influence the jury. *Nieves*, 193 Ill. 2d at 530. The videotape evidence and Velez's identification of Otgoo alone support the finding of guilt. The jury instruction limiting consideration of the evidence to evaluating the reliability of Loiacono's identification cured the prejudicial effect of hearing about Otgoo's actions during his arrest. Loiacono's testimony was not a material factor in the conviction. We cannot say the outcome of Otgoo's trial would have differed had the trial court excluded the evidence.

¶ 54                                        Impeachment

¶ 55                                         Forfeiture

¶ 56        At the outset, the State argues Otgoo forfeited any objection to prosecutorial error because he failed to object when the prosecutor named the prior conviction and he failed to raise either issue in his motion for a new trial. The State maintains further that even if Otgoo had not forfeited, no error occurred. Otgoo responds that he preserved his argument because he objected during Loiacono's testimony.

¶ 57        To preserve an issue for appeal, a litigant must object both at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) ("Both a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.)). But before addressing either prong of Otgoo's argument, we consider whether any error occurred. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) ("first step [of the plain error analysis] is to determine whether error occurred").

¶ 58                            Admission of Prior Conviction for Impeachment

¶ 59         Otgoo argues that the impeachment evidence of his 2008 aggravated battery conviction, deprived him of his right to a fair trial because the conviction had little probative value as to his credibility and was improper propensity evidence. The State responds that the trial court balanced the *Montgomery* factors (*People v. Montgomery*, 47 Ill. 2d 510 (1971)), and properly allowed the evidence. *People v Atkinson*, 186 Ill. 2d 450, 458 (2004).

¶ 60         Under the *Montgomery* rule, evidence of a prior conviction is admissible for impeachment where: (i) the crime carried a sentence of imprisonment for more than one year or involved dishonesty or false statement regardless of the punishment; (ii) the conviction was within 10 years; and (iii) the probative value of the conviction outweighs the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d 510 at 516. Even when relevant for a permissible purpose, however, the evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect. *People v. Moss*, 205 Ill. 2d 139, 156 (2001). That a prior conviction is for an offense identical to the offense being tried does not preclude its use for purposes of impeachment. *People v. Melton*, 2013 IL App (1st) 060039, ¶ 18 (citing *People v. Harden*, 2011 IL App (1st) 092309, ¶ 49). The credibility of the witnesses and the weight to be given their testimony as a whole are matters for the jury to decide. *Id.* ¶ 37. Lastly, the determination of admissibility comes within the trial court's sound discretion. *Montgomery*, 47 Ill.2d at 517-18.

¶ 61         Even though the stakes are higher for a defendant who testifies, and the balancing test must be carefully applied, the same analysis applies. Otgoo testified and, therefore, put his credibility in issue. "*Under Montgomery*, any felony conviction is presumed to relate to testimonial deceit and is also admissible." *People v. Paul*, 304 Ill. App. 3d 404, 410 (1999). *Paul* involved impeachment of nondefendant witnesses via prior convictions. But, as stated, prior felony

convictions relate to a witness's veracity. For example, prior convictions for crimes other than for an offense based on dishonesty are admissible as indicative of truthfulness. *People v. Neely*, 2013 IL App (1st) 120043, ¶ 21. See *People v. Williams*, 230 Ill. App.3 d 761, 784-85 (1992) (prior murder conviction admissible to impeach defendant in murder case).

¶ 62    The customary safeguard against the danger of prejudice rests with an instruction that the defendant's criminal record may be considered only as it bears on the weight to be given to the defendant's testimony. *Montgomery*, 47 Ill. 2d at 514. The jury instruction here (I.P.I. 3.13) did just that. See *Melton*, 2013 IL App (1st) 060039, ¶ 18 (evidence of conviction for possession of controlled substance properly allowed despite potential for prejudice; conviction was probative of defendant's credibility and jury admonished to consider conviction only for impeachment); *People v. Blankenship*, 353 Ill. App. 3d 322, 326 (2004) (in trial for AUUW, trial court not required to exclude defendant's two prior convictions for AUUW, especially when jury instructed that prior conviction could only be considered for purposes of assessing defendant's credibility).

¶ 63    Moreover, the prosecutor properly named the offense during impeachment. "Our case law interpreting Montgomery suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness' credibility. [Citations.] The mere-fact approach undermines the Montgomery rule and inhibits the jury's evaluation of a witness' credibility by eliminating the jury's consideration of the nature of the past crime." Atkinson, 186 Ill. 2d at 458. Otgoo complains that the facts of his 2008 conviction for Aggravated Battery to a Police Officer was not fully explained to the jury (Otgoo states he spit on the officer), but the law requires the conviction to be named.

¶ 64    Otgoo's petition for rehearing re-asserts the argument that plain, reversible error occurred. Otgoo accuses the prosecutor of "disseminat[ing] false information to the jury, designed to portray

Otgoo as a serious prior offender who injures law enforcement officers." The record reveals that after Otgoo testified, in rebuttal the prosecutor read from the "Certified Statement of Conviction / Disposition" which listed the offense as follows: "720-5/12-4(b)(18)     F2     AGG BTRY/HARM/PEACE OFFICER." The prosecutor told the jury "the State would like to introduce a certified statement of conviction under Case No. 08 CR 13763 which shows the People of the State of Illinois versus Otogonnamar Yuchin was convicted of the felony offense of aggravated battery causing bodily harm to a peace officer on August 27th, 2008." No further comment was made, no argument to the jury mentioned bodily harm, and the prosecutor emphasized in closing argument that the jury instruction "says you're not allowed to consider that as evidence that he was more likely to have committed this crime. That's improper, you're not allowed to do that." The prosecutor then discussed "civil society" in terms of telling the truth under oath.

¶ 65        We presume that the trial judge knew and properly applied the law, unless the record affirmatively shows otherwise. *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). "[I]t would normally be assumed that a trial judge had given appropriate consideration to the relevant [*Montgomery*] factors without requiring a specific evaluation in open court of each of them." *People v. Washington*, 55 Ill. 2d 521, 523-24 (1973).

¶ 66        It follows then, that the trial court in its discretion properly allowed the impeachment evidence. It matters not whether the battery to a police officer was spitting or using a bat or some other means of battery. Thus, Otgoo cannot establish error for the admission of the evidence, and no error occurred, let alone plain error. See *People v. Bannister*, 232 Ill. 2d 52, 71 (2008) ("Having found no error, there can be no plain error."). Otgoo asserts that if the prior conviction was admissible as impeachment, it should have been described simply as "'aggravated battery to a peace officer,' the correct name of the offense." The better practice would have been to drop the

phrase "bodily harm," but one mention when reading from an exhibit does not rise to the level of plain error.

¶ 67    Moreover, as determined, even if error was present, the evidence was not closely balanced. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). Good police work resulted in an identification of Otgoo as the assailant on the CTA train; the victim identified him both in a lineup and in court; and Otgoo's sole defense was his own testimony that he had not been on the train. This testimony was unconvincing. Considering the jury's acquittal on the second charge of aggravated battery of someone 60 years or older, the jury carefully considered the evidence and returned a well-considered verdict.

¶ 68                              Prosecutorial Misconduct

¶ 69    Otgoo argues the State violated his right to a fair trial by (i) deliberately eliciting prejudicial identification testimony from Loiacono in violation of the trial court's ruling on the motion *in limine*; (ii) deliberately eliciting irrelevant testimony from Velez about his psychological harm and then making inflammatory remarks regarding Velez's mental state; and (iii) inviting the jury to draw impermissible inferences from Otgoo's prior conviction. Otgoo asserts the cumulative effect of multiple errors deprived him of a fair trial, citing *People v. Davidson*, 235 Ill. App. 3d 605, 613 (1992), and *People v. Quiver*, 205 Ill. App. 3d 1067 (1990). These cases held that where numerous instances of prosecutorial misconduct in closing argument are alleged, a reviewing court may consider the cumulative effect rather than assess the prejudicial effect of each isolated comment. In *Quiver*, however, the court found no reversible error because comments did not substantially prejudice the defendant; in any case, failure to object during argument forfeited the issue. *Id*. at 1072.

¶ 70                          Violation of Motion *in Limine* Ruling

¶ 71    At the hearing on the defense motion *in limine*, the State agreed that any witness's statement regarding the person on the CTA video should be limited to a belief or an opinion, not a conclusive identification of Otgoo. Defense counsel objected to Loiacono's trial testimony that he reviewed the video of the CTA incident and "determined" that he was the same person arrested on March 29. The objection was sustained. At the close of trial, the trial court instructed the jury to disregard questions and exhibits which were withdrawn or to which objections were sustained.

¶ 72    The prosecutors asked Loiacono: "What did you tell Officer Lebow about the images and the still photographs that he showed to you?" Loiacono answered, "I determined *** he was the individual I arrested on March 29th." The trial court immediately sustained defense counsel's objection. The prosecutor then rephrased: "Did you have an opinion as to whether you had seen the individual before?" Loiacono then testified he "believed" the individual in the photographs to be the same individual he arrested. Defense counsel moved for a mistrial, arguing Loiacono's answer violated the court's ruling on the motion *in limine*, and the error was not cured by the objection being sustained. The trial court denied the mistrial motion.

¶ 73    Otgoo relies on *People v. Thompson*, 2016 IL 11867. But Thompson held "[t]here is no *per se* rule against admission of a law enforcement officer's identification testimony." *People v. Thompson*, 2016 IL 118667, ¶ 56. And, again, the trial court instructed the jury about treating all testimony the same, whether the witness was a law enforcement officer or not.

¶ 74    Moreover, the trial judge instructed the jury that closing arguments should be "confined to the evidence and to reasonable inferences to be drawn from the evidence." The trial court further told the jury that neither opening nor closing arguments constitute evidence, and any statement or argument made by either side not based on the evidence should be disregarded. Also, that jury disregard questions and exhibits which were withdrawn or to which objections were sustained.,

and testimony and exhibits which were refused or stricken. The jury should consider only the testimony of the witnesses and the exhibits received by the court.

¶ 75    The sustained objection to Loiacono's identification answer indicates the question was improper; the jury was instructed to disregard both the question and Loiacono's answer. We find the trial court's ruling on the motion *in limine* was not violated.

¶ 76                                   Velez's Testimony

¶ 77    Otgoo argues that the State elicited irrelevant testimony from Velez about his psychological harm exacerbated by the prosecutor's inflammatory remarks.

¶ 78    Velez testified about his physical injuries but also stated that he stopped taking public transportation at night because he was "scared." He also testified he would never wear a hoodie again, and that he would "never forget" Otgoo's face. Otgoo argues he was prejudiced when the prosecutor repeated these objectionable comments in closing argument, attempting to engender sympathy for Velez and persuade jurors to convict based on emotion.

¶ 79    The State responds that the complained-of testimony described Velez's injuries and was relevant to the charge of aggravated battery. The prosecutor argued that Velez's life had changed. The State also responds that the prosecutor properly argued the strength of Velez's memory was partially due to the trauma he had suffered.

¶ 80    Prosecutors have wide latitude in their closing arguments and may comment on and draw inferences from the evidence. *People v. Deloney*, 359 Ill. App. 3d 458, 470 (2005). A prosecutor's remarks do not warrant reversal unless they are so prejudicial that, absent those remarks, there is doubt as to whether the jury would have rendered a guilty verdict. *Id*. Here, the prosecutor summarized Velez's testimony that he no longer used public transportation at night or wore hoodies, and that he had a clear memory of Otgoo's face. The argument was fair argument based

on Velez's testimony. We do not view these remarks as inflammatory or engendering undue sympathy for the victim.

¶ 81    And, again, we note that the trial court properly gave jury instructions regarding the arguments of counsel; thereby, curing any possible error.

¶ 82                                  Closing Argument

¶ 83    Next, Otgoo asserts that the State suggested a propensity to commit crimes when it repeatedly argued that Otgoo "does not follow the rules" of a civil society and urged the jury to consider Otgoo's past conviction as proof. In making this argument, Otgoo misquotes *People v. Williams*, 161 Ill. 2d 1, 39 (1994) regarding an erosion of the *Montgomery* rule. Be that as it may, the conviction in *Williams* involved voluntary manslaughter and was improperly admitted as relevant to the question of the defendant's guilt, and not for impeachment. *Id*. at 41. Because there was overwhelming evidence of the defendant's guilt, this error was not so prejudicial as to have denied a fair trial and held harmless. *Id*. at 52.

¶ 84    A prosecutor may not characterize a defendant as "evil," but may comment unfavorably on the evil effects of the crime and urge the jury to "administer the law without fear." *People v. Herndon*, 2015 Ill App (1st) 123375, ¶ 44 (quoting *People v. Nicholas*, 218 Ill. 2d 104, 121-122 (2005). On the other hand, the prosecution cannot focus its argument on broader problems of crime in society or engage in a general denunciation of society's ills. *Id*. In *Herndon*, this court found no error in the prosecutor's argument that the defendant's conduct in selling narcotics had a negative impact on the families that lived in the neighborhood. Id. Similarly, the emphasis was on Otgoo's conduct specifically. A civil society is one in which persons may safely travel from place to place without being attacked, whether verbally or physically. Here, Otgoo attacked, and Velez suffered both mental and physical harm.

¶ 85      The situation here is distinguishable from that in *People v. Slabaugh*, 323 Ill. App.3d 723, 731-32 (2001). There, the prosecutor made objectionable comments in closing that did not relate to the issue of whether the defendant assaulted a police officer. The prosecutor returned to the subject even after the trial court sustained defense counsel's objection and instructed the prosecutor to move on. "Although the prompt sustaining of a defense objection and an instruction to disregard the improper statements will generally cure any error, when the State repeatedly attempts to make unfounded arguments, the defendant may be prejudiced despite the sustaining of the objections."

¶ 86      Otgoo maintains that the evidence was closely balanced and the prosecutor's "multiple inflammatory, improper statements could have caused the jury to convict" based on emotional appeal rather than a finding of guilt beyond a reasonable doubt. The State argues that even if the prosecutor's remarks in closing argument were error, they did not amount to plain error.

¶ 87      As we have already held, the evidence was not closely balanced. The CTA security video captured the entire incident, including views of the assailant's face and the distinctive jacket. Two weeks later, Velez identified Otgoo in a lineup, and at trial identified Otgoo. The jacket Otgoo wore at the time of his arrest five hours later was easily identified as the same jacket due to its distinctive insignia. These facts compel a conclusion of guilt beyond a reasonable doubt. See *Deloney*, 359 Ill. App.3d at 470 (overwhelming evidence of defendant's guilt mitigated likelihood jury convicted defendant based on State's improper remarks).

¶ 88                 Electronic Citation Fee

¶ 89      Finally, Otgoo concedes his final issue regarding the improper assessment of the electronic citation fee is unreviewable.

¶ 90      Affirmed.