2023 IL App (1st) 220675-U

SECOND DIVISION
March 31, 2023

No. 1-22-0675

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20 CR 10338 |
| | ) | |
| MARCEL DUNN, | ) | |
| | ) | Honorable Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1   *Held*: We affirm defendant's conviction and sentence for unlawful use or possession of a weapon by a felon. Defendant cannot prevail on his claim of ineffective assistance of counsel because defendant has not established that he was prejudiced by counsel's alleged deficient performance.

¶ 2   Defendant Marcel Dunn was arrested and charged with unlawful use or possession of a weapon by a felon and aggravated unlawful use of a weapon. On appeal, defendant argues his trial counsel was ineffective. Defendant argues private counsel rendered ineffective assistance when he failed to request a jury instruction to address the police officers' failure to activate their body cameras when police found a firearm used as evidence against him. Defendant also argues

that his trial counsel was ineffective during his sentencing hearing for failing to argue the trial court had the authority to depart from the sentencing guidelines under certain circumstances. Finding no reversible error, we affirm.

¶ 3                                                    BACKGROUND

¶ 4     Chicago Police Officers Mark Hanna and Fernando Ontanon testified that, on the evening of September 21, 2020, they were on routine patrol in an unmarked police vehicle when they noticed a gray Dodge Charger driving without working taillights. The officers activated their emergency lights and siren and attempted to pull the vehicle over. At first, the driver slowed down and moved towards the right shoulder lane of the street as if to stop. However, the vehicle did not stop completely and continued forward. The officers in the police vehicle pulled up alongside the Charger and instructed the driver to pull over with verbal instructions and hand gestures. The driver's seat window was rolled all the way down and the officers were able to see the driver for two seconds. After the officers told the driver to pull over, the driver nodded at them, but then accelerated away from them down the road.

¶ 5     The police officers continued pursuing the vehicle and they witnessed a black object being thrown from the driver's side window. The officers saw the object hit the street and saw sparks fly from the object as it slid across the pavement to the side of the road. The officers halted their pursuit of the vehicle and decided to go recover the object that was thrown from the vehicle. While Officer Hanna went to recover the object, Officer Ontanon radioed other units in the area with the identifying information for the vehicle, including the license plate.

¶ 6     The officers never lost sight of the object from the time it was thrown from the vehicle until they recovered it. The object was a fully loaded Taurus Judge revolver. The officers proceeded to their station to inventory the weapon. While on their way to the station, the officers

received a dispatch that the suspected vehicle had been located and the suspected driver of the vehicle was being held for identification. Officers Hanna and Ontanon went to the location where the suspect was detained. Once there, the officers identified both the vehicle and the suspect. Defendant was arrested.

¶ 7    Police learned that defendant had been previously convicted of aggravated battery with a firearm, and he was on parole for that offense at the time of his arrest in this case. Defendant was then charged with unlawful use or possession of a weapon by a felon and aggravated unlawful use of a weapon.

¶ 8    At the time of the attempted traffic stop, both Officer Hanna and Officer Ontanon were wearing body-worn cameras. However, the officers did not turn on their bodycams until they came to the scene where defendant was detained. They made the identification of defendant while their bodycams were turned on, but they did not capture any video of the incident giving rise to the arrest. The officers' unmarked squad car did not have a dashboard camera.

¶ 9    The case was tried before a jury. During opening statements, defendant's counsel informed the jury that the State was not going to be able to prove its case against him. The defense pointed out that the officers could have recorded the incident on their body-worn cameras, but instead, the jury would not be seeing such evidence because the officers did not turn on their cameras during the incident. The defense extensively questioned the officers who testified at trial about their failure to turn on their body-worn cameras during the incident.

¶ 10    Officer Mark Hanna testified about his observations as set forth above. When questioned about his failure to activate his bodycam, Officer Hanna acknowledged he was aware of the Chicago Police Department's special order requiring him to use his bodycam and he had been trained on using it. Officer Hanna, however, did not activate his bodycam when initially trying to

effectuate the traffic stop, and he testified that he did not turn it on when defendant began to flee due to the quickly progressing nature of the incident. Officer Hanna was driving so his focus was on driving and avoiding an accident and then on recovering the firearm from the street. Officer Hanna further testified that their bodycams are located in the middle of their chest, so even if he had it turned on during the incident, it would have only captured video of the steering wheel and would not have showed defendant throwing the gun from the vehicle.

¶ 11    During closing argument, defense counsel focused on the officers' failure to activate their bodycams.

> "I want to talk about body cameras because body cameras are an essential
> omission in this case. It's something that we should have, you should have, and
> we don't have. And there are only two people who are at fault for not having that
> body camera, and that is Officer Hanna and Officer Ontanon. That's it. They were
> trained. They had the equipment, it was working. Why not hit the button? Also,
> you have [the assisting officer who detained defendant] saying, oh, yeah, as soon
> as we started interacting, we turn on our cameras. But that's not what Hanna did.
> That's not what Ontanon did. So everything is--has to be looked at through that
> backdrop, everything that we talk about here moving forward."

Defense counsel continued by questioning the officer's testimony about the impact the bodycam evidence might have had on this case.

> "Now as much as everybody wants to talk about how the body camera of Hanna
> would have got the steering wheel and the body cam of Ontanon would have
> gotten the dashboard, I suppose, you can think that those body cams could have
> also captured what was coming out--what was in the windshield. But we don't

have that. We don't have that to show whether or not they really saw this object come out of this car or not. Whose fault is that? Hanna and Ontanon. Think about it, they're sitting in the car, they've got a camera on them. Depending on the angle, sure it might be of the steering wheel. It might be up, it might be out the windshield. Someone throws something, it could have been captured, we don't have it."

¶ 12    The jury began deliberations on the case. After about an hour of deliberating, the jury sent out a list of four questions. The first question read: "Possession: even if in car, even if defendant is unaware?" The second question read: "transcript of dispatch." The third question read: "exact timetable first view of vehicle/radio contact until arrest." The fourth question read "Establish sunset on 9/21/2020 sunset." For each of the four questions, the parties and the court agreed to respond in some form of telling the jury that it had all the information it needed and to continue deliberations.

¶ 13    About three hours after beginning deliberations, the jury returned a guilty verdict. The jury was polled, and each juror confirmed by answering in the affirmative that the guilty verdict was the verdict the juror had chosen. Judgment was entered on the verdict, and the jury was excused. After the jury had left the courtroom, the trial judge informed the parties that the jury had written a note on the side of the verdict form. The jury wrote: "Turn your body cam on!"

¶ 14    Defendant filed a posttrial motion where he argued that the evidence was insufficient to prove his guilt beyond a reasonable doubt. To support that argument, defendant pointed out that the officers were equipped with body-worn cameras but failed to activate them. Defendant contended that the jury had a reasonable doubt about his guilt, evidenced by the note the jury wrote on the verdict form. The trial court acknowledged that it was very unusual for the jury to

write a note on the verdict form, and the trial judge stated that he had not seen the jury write such a note during his 24 years of experience. The court, however, did not find the jury's note to demonstrate that it had a reasonable doubt about defendant's guilt. The trial court denied the posttrial motion.

¶ 15    The case proceeded to sentencing where defendant was being sentenced for a Class 2 felony. He was on parole at the time of the offense, and he was subject to extended-term sentencing. Defendant submitted evidence in mitigation, such as that he had a good relationship with his parents, completed his GED, and has a daughter that he helped support. Defendant submitted evidence that he grew up in Englewood, which was a tough environment, and he was previously a member of the Black Disciples street gang which he left when he was 17 years old. The State presented evidence of defendant's prior conviction where he was initially charged with attempted murder for shooting a man in the shoulder. The State argued that defendant had already received a break once when he pleaded down to aggravated battery with a firearm from the charge of attempted murder and that he should not receive a break again. The State pointed out that defendant had been given leniency and then abused it by arming himself with a firearm and then running from the police.

¶ 16    The trial court sentenced defendant to 9 years and 2 months in prison. Defendant filed a motion to reconsider his sentence, but his motion was denied.

¶ 17    After sentencing, defendant filed a supplemental posttrial motion. In his supplemental motion, defendant reiterated the argument made in his original posttrial motion and also argued that the police officers in the case violated the Law Enforcement Officer-Worn Body Camera Act (50 ILCS 706/10-1 *et seq*. (West 2020)). Defendant argued that Section 10-20 of the Act requires that cameras be turned on at all times when the officer is in uniform and engaged in any

law enforcement-related encounter or activity that occurs while the officer is on duty. Defendant argued that the evidence at trial showed Hanna and Ontanon were both equipped with body-worn cameras, but they were not activated during the incident.

¶ 18    Defendant pointed out in his supplemental posttrial motion that section 10-30 of the Act provides that, if a court finds that a recording was intentionally not captured, the jury shall be instructed to consider that violation in weighing the evidence, unless the State provides a reasonable justification. Defendant pointed to the note on the verdict form, arguing that the jury found, at least by a preponderance of the evidence, that the officers acted intentionally in not activating their body-worn cameras. Defendant argued in his motion that the jury should have been instructed to consider the violation of the statute by the officers when weighing the evidence. Defendant concluded that, given the jury's note, which demonstrated the jury's specific concern for the officers' failure to use body-worn cameras, had the jury been properly instructed, the outcome of the trial would likely have been different. The trial court denied defendant's supplemental posttrial motion.

¶ 19    Defendant now appeals both his conviction and his sentence. He asks that we reverse his conviction and remand the case for a new trial. Alternatively, defendant asks that we vacate his sentence and remand the case for a new sentencing hearing.

¶ 20                                    ANALYSIS

¶ 21    Defendant argues that he received constitutionally ineffective assistance from his trial counsel where his attorney at trial failed to request that the jury be instructed to consider the officers' failure to activate their body cameras during the events relevant to this case. Defendant's argument is based on the Law Enforcement Officer-Worn Body Camera Act (50 ILCS 706/10-1 *et seq*. (West 2020)). Defendant also argues that his trial counsel was ineffective

during his sentencing hearing where counsel failed to ask the court to depart from the applicable sentencing guidelines. Where, as here, the claim of ineffective assistance was not raised in the trial court, our review is *de novo*. *People v. Berrier*, 362 Ill. App. 3d 1153, 1166–67 (2006).

¶ 22                                    Forfeiture

¶ 23    Although not raised by either party, we must first consider whether the issue of ineffective assistance of counsel is preserved for review in this appeal. In a supplemental posttrial motion, trial counsel argued that the jury should have been instructed about the officers' failure to activate their body cameras and also asked for reconsideration of his sentence. However, counsel did not argue in either of the posttrial motions he filed that defendant received ineffective assistance due to his failure to request the instruction or that he was ineffective for his failure to inform the court it could depart from the sentencing guidelines. Generally, the failure to raise an issue in a posttrial motion constitutes a forfeiture of the issue for purposes of appeal. *People v. Banks*, 2016 IL App (1st) 131009, ¶ 110.

¶ 24    While, generally, issues not included in a posttrial motion are forfeited, where trial counsel has a conflict of interest in which he would have been required to allege his own ineffective assistance for not tendering an instruction, the issue can be heard for the first time on appeal. *People v. Parker*, 288 Ill. App. 3d 417, 421 (1997). In this case we note the State did not argue the ineffectiveness of counsel claims were waived or forfeited, and the parties addressed both ineffective assistance claims on the merits in the briefs. To preserve defendant's ineffective assistance issues, counsel was in the unenviable position of being required to confess his own deficient performance in the posttrial motions. We find the record is sufficient for our review of the issue. Based on these circumstances we have elected to consider defendant's arguments on the merits. See *Parker*, 288 Ill. App. 3d at 421.

¶ 25                    Ineffective Assistance - Body Camera Instruction

¶ 26    The Law Enforcement Officer-Worn Body Camera Act was enacted to help in the collection of evidence, while at the same time improving transparency and accountability, and strengthening public trust. 50 ILCS 706/10-5 (West 2020). The aim of the Act is to foster trust and mutual respect between law enforcement agencies and the communities they protect and serve which the General Assembly recognized as essential to effective policing and to the integrity of our criminal justice system. *Id.* Among other things, the Act requires officers' body cameras to be "turned on at all times when the officer is in uniform and is responding to calls for service or engaged in any law enforcement-related encounter or activity that occurs while the officer is on duty." 50 ILCS 706/10-20(a)(3) (West 2020). However, if "exigent circumstances exist which prevent the camera from being turned on, the camera must be turned on as soon as practicable." *Id*. at § 10-20(a)(3)(A).

¶ 27    The Act stipulates that the recordings from officers' bodycams "may be used as evidence in any administrative, judicial, legislative, or disciplinary proceeding." 50 ILCS 706/10-30 (West 2020). The General Assembly also created and imposed an evidentiary rule which states that the failure of a police officer to use his bodycam in a manner consistent with the Act, if intentional, can be considered by the fact finder when weighing the evidence.

> "If a court or other finder of fact finds by a preponderance of the evidence that a recording was intentionally not captured, destroyed, altered, or intermittently captured in violation of this Act, then the court or other finder of fact shall consider or be instructed to consider that violation in weighing the evidence, unless the State provides a reasonable justification." *Id.*

¶ 28 Chicago Police Department Special Order S03-14, titled "Body Worn Cameras," provides a similar requirement to the provisions of the Act.

> "[t]he Department member will activate the system to event mode at the
> beginning of an incident and will record the entire incident for all law-
> enforcement-related activities. If circumstances prevent activating the [body
> camera] at the beginning of an incident, the member will activate the [body
> camera] as soon as practical. Law-enforcement-related activities include but are
> not limited to:
>
> * * *
>
> e. foot and vehicle pursuits." Chi. Police Dep't Special Order S03-14,
> § III(A)(2)(e) (eff. Oct. 17, 2017).

¶ 29 Defendant argues that his trial counsel was constitutionally ineffective because the attorney failed to request that the jury be instructed to weigh the evidence through the lens of the officers' violation of the Law Enforcement Officer-Worn Body Camera Act. Defendant maintains that, based on the circumstances presented in this case, his counsel's failure to request a jury instruction based on the Act was an error, and counsel's failure in this regard was highly prejudicial.

¶ 30 The United States Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. Amend. VI (West 2020). Thus, where a criminal defendant is convicted of an offense but did not receive constitutionally adequate representation, he can seek relief to vindicate his constitutional right to counsel. *People v. Burnett*, 2019 IL App (1st) 163018, ¶ 9. To be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness

and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *People v. Scott*, 2015 IL App (1st) 131503, ¶ 27. The failure to satisfy both prongs of the *Strickland* test precludes relief for ineffective assistance of counsel. *People v. Patterson,* 192 Ill. 2d 93, 107 (2000). We analyze claims of ineffective assistance of counsel by considering the entire record. *People v. Hommerson*, 399 Ill. App. 3d 405, 415 (2010).

¶ 31    Defendant argues that his trial counsel was ineffective for failing to request a jury instruction that would have informed the jury about the Law Enforcement Officer-Worn Body Camera Act and the effect its violation could have on the jury's consideration of the evidence. Defendants have a constitutional right to have the jury properly instructed on the applicable law. *People v. Mitchell*, 221 Ill. App. 3d 979, 985 (1991); *People v. Smith*, 2019 IL App (1st) 161246, ¶ 42. The purpose of jury instructions is to communicate to the jury the correct principles of law relating to the evidence presented at trial to enable the jury to reach a correct conclusion regarding the defendant's guilt or innocence based on the law and evidence. *People v. Nash*, 2012 IL App (1st) 093233, ¶ 26. Due process requires a fair trial before a properly instructed jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8. In determining whether the failure to give an instruction deprived defendant of a fair trial, the appellate court "must look to all the circumstances to determine whether defendant received a fair trial, including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors." *People v. Layhew*, 139 Ill. 2d 476, 486 (1990).

¶ 32    Because there is currently no pattern jury instruction relating to the provisions of the Law Enforcement Officer-Worn Body Camera Act, defendant contends that his trial counsel "should have requested the jury be instructed with a non-IPI jury instruction explaining the appropriate way to evaluate Hanna and Ontanon's testimony in light of their violations of the Body Camera

Act." Defendant argues that the officers involved in pursuing defendant were required to have their bodycams turned on because they were engaged in a law-enforcement-related encounter or activity, and they failed to show the existence of any circumstances that would excuse their failure to activate their bodycams. Most significantly, according to defendant, was the jury's own expression that it found the officers' failure to turn on their body cams problematic. Defendant points out that the jury deliberated for three hours in a relatively straightforward case with few witnesses, and it also sent out four questions during deliberations. The jury then expressly made a statement by writing on the verdict form "Turn your body cam on!" Defendant maintains that "given that the jury took the highly unusual step of reprimanding the officers on the verdict form, it is certainly reasonable that a different outcome would have occurred had counsel requested the jury be instructed pursuant to Section 10-30."

¶ 33    While this appeal was pending, our supreme court decided a case involving jury instructions in connection with section 10-30 of the Law Enforcement Officer-Worn Body Camera Act. *People v. Tompkins*, 2023 IL 127805, ¶ 1. In *Tompkins*, the police were involved in a car chase with a vehicle that fled an attempted traffic stop. *Id*. at ¶ 11. Other units assisted the officers who were initially involved in the chase. *Id*. at ¶ 12. One of the assisting officers was chasing a suspect on foot, and the officer saw the suspect toss an object over a fence before stopping and surrendering to the police. *Id*. at ¶ 17. The officers recovered a firearm right in the area the officer saw the suspect throw the object over the fence. *Id.*

¶ 34    The officer who chased and arrested the defendant was wearing a bodycam but did not have it turned on. *Id*. at ¶ 19. The officer testified that, due to the spontaneous nature of the event, everything happening so fast, he did not think to turn on his bodycam because the safety of himself and his partner was more pressing to him at the time. *Id*.

¶ 35　At trial, the defense discussed the officer's failure to capture the incident on his bodycam during its opening statement, its questioning of the officers, and in its closing argument. The defense submitted a non-pattern jury instruction, attempting to track the language of the Law Enforcement Officer-Worn Body Camera Act. *Id.* at ¶¶ 24-25. The trial court found that the officer gave a reasonable justification for not activating his bodycam and declined to instruct the jury about the rule set forth in the Act. *Id.* at ¶ 26. After being found guilty, defendant appealed, arguing that the trial court erred when it refused to instruct the jury that it could consider the officer's failure to capture the incident on bodycam video when evaluating the evidence. *Id.* at ¶ 37. The appellate court affirmed the defendant's conviction over his claim of error, and the supreme court allowed the defendant's petition for leave to appeal. *Id.*

¶ 36　Before the supreme court, the defendant in *Tompkins* argued "that the plain language of section 10-30 of the Act, quoted above, requires that the jury, as the finder of fact, be instructed in accordance with that section in any case where there is some evidence to support a theory that a testifying police officer failed to activate his body camera in violation of the Act." *Id.* at ¶ 45. The supreme court agreed with the defendant's argument. *Id.* The supreme court held that the arresting officer's testimony about not activating his body camera before or during the foot pursuit demonstrated that there was "some evidence" of a violation of section 10-30 of the Act and, therefore, defendant was entitled to have the jury instructed on the subject. *Id.* at ¶ 47.

¶ 37　The supreme court, however, found that the proposed jury instruction the defendant tendered was an inaccurate statement of the law. *Id.* at ¶ 54. And because the proposed instruction did not accurately state the law, the supreme court found that the trial court did not abuse its discretion when it denied defendant's request to offer the proposed instruction to the jury. *Id.*

¶ 38    Additionally, our supreme court found that the error in *Tompkins* was harmless because the jury was instructed to consider all the evidence in light of its own observations and experiences in life. *Id*. at ¶ 56. Furthermore, the jury was made amply aware that it should consider the evidence in light of the fact that the officer failed to turn on his bodycam despite the officers being required to do so. *Id*. The defense had discussed the bodycam issue in its opening statement, during its questioning of the officers, and during its closing argument such that "defense counsel repeatedly directed the jury to focus on this failure on the part of [the arresting officer] in determining his credibility." *Id.* The court held that, based on the circumstances presented in that case, the jury necessarily considered the officer's failure to activate his bodycam when assessing his credibility. *Id*. Even though the jury was not specifically instructed pursuant to the term of the statute, our supreme court held that the jury must have considered the issue when assessing the officer's credibility such that the error was harmless. *Id*. The court also found that the error did not affect the outcome of the trial because the evidence of defendant's guilt was strong, despite the absence of the bodycam video. *Id*. at ¶ 57.

¶ 39    In this case there is some evidence that there was a violation of the Act, despite the fact police gave an explanation for not turning on their body cameras. Based on our supreme court's decision in *Tompkins* and our review of the statute, we agree with defendant that it was erroneous for trial counsel not to request a jury instruction addressing the failure of officers to activate their body cameras during the trial proceedings. Trial counsel did not raise the issue until he filed the supplemental posttrial motion which was insufficient to adequately protect defendant's trial rights.

¶ 40    However, to obtain relief on his claim of ineffective assistance of counsel, defendant must establish not only that counsel's performance was deficient, but he must also show that

prejudice resulted from counsel's error. *People v. Patterson,* 192 Ill. 2d 93, 107 (2000). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364–65 (1981)). Here, like in *Tompkins* (and for the same reasons), defendant cannot show he was prejudiced by counsel's error. See also *People v. Johnson*, 2021 IL App (1st) 192207-U, ¶ 39.

¶ 41     Failure to request a particular jury instruction may be grounds for finding ineffective assistance of counsel, only if the instruction was so critical to the defense that its omission denied the accused his right to a fair trial. *People v. Pelgram*, 134 Ill. 2d 166, 174 (1988). Satisfying the prejudice prong of the ineffective assistance of counsel framework necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced. *People v. Bew*, 228 Ill. 2d 122, 128-29 (2008). In other words, trial counsel's deficient performance must have rendered the outcome unreliable or the proceeding fundamentally unfair. *Strickland*, 466 U.S. at 694.

¶ 42     There is not a reasonable probability in this case that, had the jury been given an instruction consistent with section 10-30 of the Act, the result of the case would have been different. As set forth above, the jury was made aware of the body camera requirements repeatedly throughout the trial. One of defense counsel's main attacks on the sufficiency of the evidence against defendant at trial was the lack of bodycam video, and defense counsel also repeatedly attacked the officers' credibility based on their failure to comply with the requirement to activate their bodycams. Defense counsel urged the jury on multiple occasions to consider the officers' testimony in light of the officers' failure to turn on their cameras. The jury was instructed that its job was to judge the believability of the witnesses and to weigh the testimony

given by each of them. The court instructed the jurors that, "[i]n considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case." The jury was also instructed that, when it "weigh[ed] the identification testimony of a witness, [it] should consider *all* the facts and circumstances in evidence." (Emphasis added). See IPI Criminal No. 1.02; IPI Criminal No. 3.15. It is clear that the jury did evaluate the officers' testimony here in light of their failure to activate their body cameras, which is exactly what the instruction would have told the jury it was permitted to do. See *Tompkins*, 2023 IL 127805, ¶ 56.

¶ 43    Also like in *Tompkins*, the evidence of defendant's guilt here was strong. Officers observed defendant commit a traffic violation and tried to effectuate a traffic stop. Defendant failed to stop the vehicle and continued moving forward. The officers pulled next to defendant, who had his window rolled down, and the officers had a clear view of defendant's face. Defendant accelerated away and fled from the officers. A short time later, the officers were directly behind defendant's vehicle when they witnessed him throw an object from the window. The officers momentarily gave up chasing defendant and stopped to secure the object, which turned out to be a handgun. The officers never lost sight of the weapon from the time defendant threw it out of the window until the time the officers recovered it. The officers radioed ahead to the other police units in the area a description of defendant's vehicle and the license plate.

¶ 44    Defendant's vehicle was spotted minutes later by assisting officers. Defendant was standing outside the vehicle, which matched the vehicle description called in by the officers initially pursuing defendant, including that it had the same license plate number. Defendant was detained pending an identification by the officers who had seen him throw the weapon from the

window of the moving vehicle. The officers identified defendant at the scene as the person they had seen minutes earlier driving the vehicle. The vehicle was also registered to defendant. The officers identified defendant again in court and there was no real convincing challenge to any aspect of the officer's identification of defendant. Based on the totality of the circumstances and the totality of the record, which we are required to consider when evaluating a claim of ineffective assistance of counsel, there is no likelihood that the outcome of the case would have been different if the jury was instructed consistent with the provisions of the Law Enforcement Officer-Worn Body Camera Act, therefore defendant's claim of ineffective assistance fails.

¶ 45                    Ineffective Assistance-Sentencing

¶ 46    Defendant also raises an issue regarding his sentencing hearing. Defendant contends that he received constitutionally ineffective assistance of counsel during sentencing where his attorney failed to request that the trial court depart from the enhanced sentencing range. The statute under which defendant was sentenced provides for a minimum sentence of seven years and a maximum sentence of 14 years for the offense defendant was convicted of committing. 730 ILCS 5/5-4.5-110(c)(1) (West 2020). The sentencing statute, however, gives the circuit court discretion to depart from the sentencing guidelines under certain circumstances. *Id.*

¶ 47    The sentencing court is permitted to depart from the sentencing guidelines if the court finds substantial and compelling justification that the sentence within the sentencing guidelines would be unduly harsh and that a sentence otherwise authorized by law would be consistent with public safety and does not deprecate the seriousness of the offense. 730 ILCS 5/5-4.5-110(d)(1) (West 2020). The statute contains a list of factors the sentencing court might consider in order to determine whether a departure from the sentencing guideline might be warranted, such as the defendant's age, the circumstances of both the current offense and the qualifying predicate

offense, the time that has elapsed since the qualifying predicate offense, the defendant's prior criminal history, and whether departure from the sentencing guidelines is in the interest of the person's rehabilitation. See 730 ILCS 5/5-4.5-110(d)(2) (West 2020).

¶ 48     Defendant argues that mitigating factors, including his youth at the time of the qualifying offense, the nature of the offense in this case, his educational and vocational potential, and his strong family ties support a downward departure from the sentencing guidelines. He asks that we remand the case for resentencing.

¶ 49     Defendant was convicted in this case of unlawful use or possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2020). Defendant was on parole at the time he committed the offense giving rise to this conviction. Therefore, his conviction is a Class 2 felony. 720 ILCS 5/24-1.1(e) (West 2020). The predicate offense for which defendant was on parole was a Class X offense involving the use of a weapon, and defendant was convicted in that case within 10 years of his conviction in this case. Therefore, defendant was subject to extended-term sentencing for this Class 2 felony. 720 ILCS 5/5-5-3.2(b)(1) (West 2020). The applicable sentencing range for defendant's conviction under the extended-range Class 2 felony sentencing was a term of imprisonment of not less than 7 years and not more than 14 years. 730 ILCS 5/5-4.5-35(a) (West 2020). The trial court was required to sentence defendant within this range unless the court found that a departure from that sentencing range was justified. See 730 ILCS 5/5-4.5-110(d)(1) (West 2020).

¶ 50     Defendant does not meaningfully argue that the trial court abused its discretion in fashioning his sentence. Instead, defendant argues that his trial counsel was ineffective for failing to advise the trial court that it had the discretion to depart from the sentencing guidelines and, therefore, that it had the discretion to sentence defendant to a lesser term. During sentencing,

defense counsel presented evidence on a variety of topics that he believed demonstrated defendant's entitlement to a lenient sentence, including defendant's age, the fact that he had only one prior criminal conviction, his education and employment, and the familial support defendant enjoys. Defense counsel strongly advocated for defendant to be sentenced to the minimum term. However, even though the minimum sentence in the generally applicable sentencing range was 7 years in prison, the trial court sentenced defendant to 9 years and 2 months in prison. There is no reason to believe that if the trial court had been advised it could sentence defendant to less than seven years, it would have done so. Indeed, at the time of his arrest, defendant was already on parole after receiving a seven-year sentence for aggravated battery. There is nothing in the record to suggest that, had defense counsel raised the issue, the trial court would have found a "substantial and compelling justification" for departing from the seven-year minimum sentence provided by the sentencing guidelines and sentenced defendant to a term below the generally applicable guidelines. See 730 ILCS 5/5-4.5-110(d)(1) (West 2020).

¶ 51      The record shows that, during the predicate offense that subjected defendant to an extended sentence here, defendant discharged a firearm six times in the direction of the victim, striking him once. After pleading guilty and spending time in prison, defendant armed himself again and got into a car with a loaded weapon while he was on parole. He fled from the police and threw a loaded weapon from the window of his moving vehicle onto a neighborhood street.

¶ 52      At the sentencing hearing, defense counsel presented evidence and argument on each of the subjects that defendant now claims might have warranted a downward departure from the sentencing guidelines. While defense counsel did not specifically ask the trial court to deviate from the applicable sentencing range, counsel argued all the reasons why the trial court should do so. The trial court had all the information before it if it wished to sentence defendant to a

lesser term than it imposed. Moreover, the trial court is presumed to know the law, and, on review, the appellate court presumes that the trial court followed all applicable laws unless the record indicates otherwise. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 85. We must presume the trial court knew it could depart from the sentencing guidelines if it wished to do so. *Id.*

¶ 53    Defendant cannot show that, had counsel requested a departure from the sentencing guidelines, his resulting sentence would have been any different. His claim of prejudice rests entirely on speculation. Defendant's sentence was in the middle of the applicable sentencing range and there is no indication that the sentence is manifestly disproportionate to the nature of the offense or at great variance with the spirit and purpose of the law. Defendant's claim for ineffective assistance of counsel during sentencing fails for a lack of showing prejudice.

¶ 54                                 CONCLUSION

¶ 55    Accordingly, we affirm the conviction and sentence.

¶ 56    Affirmed.